**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI (State Bar No. 181547)
ANNA C. HAAC (*pro hac vice* to be filed)
SABITA SONEJI (Sate Bar No. 224262)
REBECCA AZHDAM (*pro hac vice* to be filed)
483 Ninth Street, Suite 200
Oakland, CA 94706
Telephone: 510-254-6808
Facsimile: 202-973-0950

**KOPELOWITZ OSTROW FERGUSON**
**WEISELBERG GILBERT**
JONATHAN M. STREISFELD (*pro hac vice* to be filed)
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

**PEARSON, SIMON & WARSHAW, LLP**
MELISSA S. WEINER (*pro hac vice* to be filed)
JOSEPH C. BOURNE (State Bar No. 308196)
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile:     (612) 389-0610

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREA CAPITO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DITECH FINANCIAL LLC,<br><br>Defendant. | CASE NO. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Andrea Capito ("Plaintiff" or "Ms. Capito"), on behalf of herself and all others similarly situated, by and through her counsel, brings this Class Action Complaint ("Complaint") against Defendant Ditech Financial LLC (formerly f/k/a ditech Mortgage and Green Tree Servicing, LLC) ("Defendant" or "Ditech"), and based upon personal knowledge with respect to herself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## STATEMENT OF THE CASE

1.      Mortgage lenders and mortgage loan servicers, including Ditech, often require homeowners to maintain escrow accounts as part of their mortgage agreements in order to ensure funds are available for the payment of property tax, insurance, and other assessments on the mortgaged property. These deposited funds remain in escrow until their respective payments become due and payable.

2.      Ditech routinely and willfully violates the laws of California and thirteen other states by not paying interest on putative class members' funds held in escrow. The applicable California statute (Cal. Civ. Code § 2954.8) mandates that interest be paid to homeowners on all funds deposited into escrow accounts for loans secured by real property located in the State of California of at least 2% per annum on all funds deposited into escrow accounts.

*3.*      California law requires lenders and servicers to pay interest earned on escrowed funds:

> ***Every financial institution that makes loans upon the security of real property*** containing only a one-to-four-family residence and located in this state or purchases obligations secured by such property and that receives money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, ***shall pay interest on the amount so held to the borrower. The interest on such amounts shall be at the rate of at least 2 percent simple interest per annum.*** Such interest shall be credited to the borrower's account annually or upon termination of such account, whichever is earlier.

\* \* \*

> *No financial institution subject to the provisions of this section shall impose any fee or charge* in connection with the maintenance or disbursement of money received in advance for the payment of taxes and assessments on real property securing loans made by such financial institution, or for the payment of insurance, or for other purposes relating to such real property, *that will result in an interest rate of less than 2 percent per annum being paid on the moneys so received*.

**Cal. Civ. Code § 2954.8(a) (emphasis added).**

4.      Similarly, New York law requires lenders and servicers to pay interest earned on escrowed funds:

> **Any *mortgage investing institution which maintains an escrow account pursuant to any agreement executed in connection with a mortgage* on any one to six family residence occupied by the owner or on any property owned by a cooperative apartment corporation . . . located in this state shall, for each quarterly period in which such escrow account is established,** *credit the same with dividends or interest at a rate of not less than two per centum* **per** *year* **based on the average of the sums so paid for the average length of time on deposit** *or a rate prescribed by the superintendent of financial services* **pursuant to section fourteen-b of the banking law and pursuant to the terms and conditions set forth in that section** *whichever is higher.* **. . . No mortgage investing institution shall impose a service charge in connection with the maintenance of an escrow account unless provision therefor was expressly made in a loan contract executed prior to the effective date of this section.**

**N.Y. Gen. Obl. Law § 5-601 (emphasis added).**

5.      **Iowa law requires lenders and servicers to pay interest earned on escrowed funds pursuant to Iowa Code § 524.905(2), which provides:**

**A bank may include in the loan documents signed by the borrower a provision requiring the borrower to pay the bank each month in addition to interest and principal under the note an amount equal to one-twelfth of the estimated annual real estate taxes, special assessments, hazard insurance premium, mortgage insurance premium, or any other payment agreed to by the borrower and the bank in order to better secure the loan.** *The bank shall be deemed to be acting in a fiduciary capacity with respect to these funds. A bank receiving funds in escrow pursuant to an escrow agreement executed* **on or after July 1, 1982 in connection with a loan as defined in section 535.8, subsection 1,** *shall pay interest to the borrower on those funds***, calculated on a daily basis, at the rate the bank pays to depositors of funds in ordinary savings accounts. A bank which maintains an escrow account in connection with any loan authorized by this section, whether or not the mortgage has been assigned to a third person . . . .**

**(Emphasis added).**

6.     Utah law requires lenders and servicers to pay interest earned on escrowed funds pursuant to Utah Code Ann. § 7-17-1 *et seq*., including § 7-17-3(1) and 7-17-3(1)(a), which provides:

*Each lender requiring the establishment or continuance of a reserve account* **in connection with an existing or future real estate loan shall, on a yearly basis as of December 31,** *calculate and credit to the account interest* **on the average daily balance of funds deposited in the account at a rate equal to: (a) 5-1/2%.**

**(Emphasis added).**

7.     Ten other states have similar statutes requiring financial institutions to pay borrowers interest on their escrow accounts. Conn. Gen. Stat. § 49-2a (Connecticut); ME. Rev. Stat. Ann. tit. 33, § 504 (Maine); MD. Comm. Law Code Ann. § 12-109 (Maryland); Mass.

Gen. L. ch. 183, § 61 (Massachusetts)[1]; Minn. Stat. Ann. § 47.20, subd. 9 (Minnesota); N.H. Rev. Stat. Ann. § 384:16-a *et seq.* (New Hampshire); OR. Rev. Stat. §§ 86.205, 86.245 (Oregon); R.I. Gen. Laws § 19-9-2 (Rhode Island); Vt. Stat. Ann. tit. 8, § 10404 (Vermont); and Wis. Stat. § 138.052 (Wisconsin).

8.     With the passage of the Dodd Frank Wall Street Reform and Consumer Protection Act ("Dodd Frank"), Congress further made clear that state laws like Cal. Civ. Code § 2954.8(a), Iowa Code § 524.905(2), NYGOB § 5-601, and Utah Code Ann. § 7-17-3(1)(a), among others, are to be given full force and effect, enacting 15 U.S.C. § 1639d(g)(3) in 2010, which states: "If prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that State or Federal law."

9.     In plain contravention of state and federal law, Ditech has failed to pay mandated interest to putative class members, thereby enriching itself on the free use of mortgagors' escrow funds to generate income that Ditech unjustly keeps for itself. This class action lawsuit is brought on behalf of all of those homeowners who held loans originated by or serviced by Ditech in the thirteen states with escrow interest laws to recover their unpaid interest and to compel Ditech to comply with the law going forward.

## PARTIES

10.     **Plaintiff Andrea Capito, at all times mentioned herein, has resided at 17135 Castroville Blvd., Salinas, California 93907.**

11.     **Defendant Ditech Financial LLC is a Delaware limited liability company with its principal place of business located at 1100 Virginia Drive, Suite 100A, Fort Washington, Pennsylvania 19034.**

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because: there are 100 or more class members; at least one class

---

[1] Plaintiff is not including Defendant's violation of this statute until after compulsory pre-suit notice has been completed.

member is a citizen of a state that is diverse from Defendant's citizenship; and the matter in controversy exceeds $5 million, exclusive of interest and costs.

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the Constitution, laws, or treaties of the United States.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337(a) because Plaintiff asserts a claim arising under an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

15.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1640(e) because Plaintiff asserts a claim arising under 15 U.S.C. § 1640 and the Truth in Lending Act ("TILA").

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including this District and Plaintiff resides in this District.

17.     In accordance with California Civil Code Section 1780(d), during the Class Period, Ditech was conducting business in this District. Thus, Venue is proper under Cal. Civ. Code § 1780(d).

## STATEMENT OF FACTS

18.     Ms. Capito, a special education teacher, purchased her current and only home in 1994.  In or about 1998, Plaintiff took out a mortgage loan on the property with General Motors Acceptance Corporation ("GMAC").  In or about 2002, after fire destroyed part of her home, Ms. Capito refinanced her loan with GMAC.

19.     In January 2010, Green Tree Servicing, LLC, which is now Ditech, purchased the mortgage servicing right for numerous loans from GMAC.

20.     Beginning as early as 2011, GMAC required Plaintiff to deposit funds into an escrow account in order to set aside funds for payment of insurance and taxes.

21.     On or about September 2013, Ditech (f/k/a Green Tree Servicing, LLC) acquired Plaintiff's first mortgage from GMAC, or one of its it's assigns and/or successors. In September 2013, maintenance and control of the escrow account for Plaintiff's property was transferred to Ditech (f/k/a Green Tree Servicing, LLC), which established an escrow account by letter to Ms.

Capito on September 7, 2013. That letter sets out the requirement that Ms. Capito make monthly payments in order to set aside monies for the payment of "Hazard" insurance and "Taxes" on the property.

22.    Thus, from September 2013 through the present, Ms. Capito has deposited monthly funds into an escrow account controlled and maintained by Ditech. By way of example, from September 2013 through September 2014, Ms. Capito deposited $7,629.86 into the escrow account controlled and maintained by Ditech.

23.    However, Ms. Capito has never received the interest accrued on the escrow account. Her mortgage with Ditech does not contain any provisions that permit Ditech to withhold the interest accrued on this account.

24.    Upon information and belief, Ditech is profiting off the funds held in escrow by generating float income, which Ditech retains for itself. Float income is revenue from the investment of funds held by Ditech.

25.    Therefore, Plaintiff, on behalf of herself and all others similarly-situated, brings this action to stop Ditech's unlawful conduct and to obtain monetary and equitable relief for homeowners who did not receive the interest to which they were entitled.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and the members of a Class comprised of:

**All mortgagors** who hold a mortgage loan for an owner-occupied residence located in California, Connecticut, Iowa, Maine, Maryland, Minnesota, New Hampshire, New York, Oregon, Rhode Island, Utah, Vermont, or Wisconsin and paid money into an escrow account that was maintained or serviced by Ditech formerly f/k/a ditech Mortgage and Green Tree Servicing, LLC (or its subsidiaries, related entities, predecessors-in-interest, successors, agents, servicers, or sub-servicers) for advance payment of taxes, assessments, insurance, or for other purposes relating to the property, but did not receive interest on funds held in the escrow account.

30.    Specifically excluded from the Class is any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, Defendant's legal representatives, assigns, and successors, and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

31.    **Numerosity of the Class:** Members of the Class are so numerous that joinder is impracticable. The Class is believed to be comprised of thousands of members geographically dispersed persons throughout 13 states. Ditech is the third largest residential mortgage servicer in the United States, with over three million customers. The Class is readily identifiable from information and records in Defendant's possession.

32.    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include:

     a.    Whether Ditech has systematically engaged in conduct that violates the laws of 13 states by not paying legally required interest on homeowners' escrow accounts;

     b.    Whether Ditech engaged in unlawful, unfair, deceptive, or unconscionable trade practices by failing to comply with the laws of 13 states that mandate payment of escrow interest;

     c.    Whether Ditech must provide damages or restitution in the amount of interest accrued on escrow accounts to its customers based on the causes of action asserted herein; and

     d.    Whether declaratory and/or injunctive relief is appropriate to prohibit Ditech from engaging in this conduct in the future.

33.    **Typicality:** Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by Ditech's policy of not paying interest on homeowners' escrow accounts in violation of the laws of the 13 states and the Truth in Lending Act. Plaintiff, like all members of the Class, has sustained damages arising from Ditech's violation of applicable contractual, state, and federal law, as alleged herein. Plaintiff and members of the Class were and

are similarly or identically harmed by the same violations of state escrow interest laws, and unlawful, deceptive, and systematic pattern of misconduct engaged in by Defendant.

34.     **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained competent counsel with experience prosecuting complex class actions, including class actions against mortgage lenders.

35.     **Superiority:** Class action treatment is a superior method for the fair and efficient adjudication of this controversy in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The class mechanism provides injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually and its benefits substantially outweigh any difficulties that may arise in the management of this class action.

36.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

37.     Ditech has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### (Violation of Materially Identical State Escrow Interest Statutes)

38.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

39.     Ditech is a "financial institution that makes loans" within the meaning of Cal. Civ. Code § 2954.8(a).

40.     Plaintiff and Ditech executed an agreement in connection with a loan on real

property within State of California. Defendant maintained an escrow account pursuant to this agreement.

41.     Plaintiff deposited funds into the escrow account.

42.     Defendant did not credit Plaintiff with interest on the funds in the escrow account.

43.     Defendant has violated Cal. Civ. Code § 2954.8.

44.     Plaintiff also bring these statutory claims pursuant to the substantially and materially similar escrow interest laws identified below, all of which were enacted and designed to mandate the payment of interest on escrow funds ("State Escrow Interest Statutes"):

a.     Cal. Civ. Code § 2954.8 (California);

b.     Conn. Gen. Stat. § 49-2a (Connecticut);

c.     Iowa Code § 524.905(2) (Iowa);

d.     ME. Rev. Stat. Ann. tit. 33, § 504 (Maine);

e.     MD. Comm. Law Code Ann. § 12-109 (Maryland);

f.     Minn. Stat. Ann. § 47.20, subd. 9 (Minnesota);

g.     N.H. Rev. Stat. Ann. § 384:16-a *et seq.* (New Hampshire);

h.     NY Gen. Oblig. Law § 5-601 (New York); j.

i.     OR. Rev. Stat. §§ 86.205, 86.245 (Oregon);

j.     R.I. Gen. Laws § 19-9-2 (Rhode Island);

k.     Utah Code Ann. § 7-17-1 *et seq.* (Utah);

l.     Vt. Stat. Ann. tit. 8, § 10404 (Vermont); and

m.     Wis. Stat. § 138.052 (Wisconsin).

45.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

46.     As a direct and proximate result of such actions, Plaintiff and the members of the Class are entitled to their actual damages, together with interest thereon; and reasonable attorney's fees and costs.

**SECOND CLAIM FOR RELIEF**

**Unfair and Unlawful Business Acts and Practices,**

**In Violation of the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.**

**(On Behalf of the California Class)**

47.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

48.    Such acts of Defendants, as described above, and each of them constitute unfair, unlawful and fraudulent business acts and practices.

49.    Specifically, Defendants have engaged in unfair competition within the meaning of California Business & Professions Code §§ 17200 *et seq*. as described in the following paragraphs.

50.    Specifically, Plaintiff was injured by Ditech's knowing and willful policy of refusing to pay interest on homeowners' escrow accounts, in violation of California Business & Professions Code §§ 17200 *et seq*.

51.    Defendant's knowing and willful failure to pay interest on homeowners' funds held in escrow, as required by state law, which Ditech did in order to enrich itself at the expense of homeowners, constitutes unlawful, unfair, fraudulent, and deceptive business acts and practices.

52.    Ditech's periodic "Escrow Account Disclosure" statements and mortgage statements that Ms. Capito and other members of the Class receive do not accurately disclose the amount of money they are due in connection with the escrow accounts because they do not include interest Ditech is required to pay on homeowners' funds held in escrow.

53.    Instead, these statements are knowingly and intentionally designed to assure unsuspecting homeowners like Ms. Capito and other member of the Class that Ditech is properly managing their escrow accounts and ensuring any excess escrow amounts are returned to homeowners, when in fact Ditech is intentionally withholding interest that it owes homeowners on their escrow funds.

54.    Indeed, the form statements and accompanying literature that Ditech sends or makes available to homeowners is replete with misleading information, whereby Ditech accounts for escrow funds and claims to complete periodic analyses of homeowners' escrow accounts to ensure they are funded correctly so that any surpluses are returned to homeowners. However, in practice,

Ditech intentionally excludes from its yearly analysis the interest it owes on homeowners' escrow accounts as mandated by state law, which Ditech never sends to homeowners.

55.      On one occasion, Ditech (f/k/a Green Tree Servicing, LLC) sent Ms. Capito an Escrow Account Disclosure Statement dated May 6, 2015, in which it included an "INT" reference in a paragraph defining codes that may appear on the statement.  "'INT' INDICATES AN ESCROW INTEREST CREDIT AMOUNT."  Such language does not appear on other versions of escrow statements that Ms. Capito received, but demonstrates an awareness of the requirement to pay interest.  However, the statement refers to neither the accrual nor payment of any interest on the escrow balance, and Ms. Capito was never paid interest.

56.      A typical homeowner in receipt of Ditech's escrow account statements and mortgage statements and accompanying information would naturally and reasonably assume that the accounting therein was accurate and in compliance with California and federal law. Such homeowners are thus deceived by Ditech, which nowhere corrects the misleading impression it gives them that they are receiving the full escrow amounts they are due, when in fact Ditech is intentionally and knowingly withholding interest owed.

57.      By failing to apply interest to amounts owed, Ditech's escrow account statements do not set forth accurate amounts owed in violation of both state and federal law.

58.      A reasonable consumer would think that the figures in these statements are accurate.

59.      For these reasons, Plaintiff and the Class members also overpaid on their mortgage obligations.

60.      Plaintiffs and members of the Class were injured by Defendant's conduct because they did not receive the benefit of the interest withheld on their accounts and overpaid on their mortgage obligations.

61.      Furthermore, Defendant's unfair business acts constituted a course of conduct of unfair competition because Defendant withheld interest from Plaintiff and the class in a manner that is likely to deceive the public, and Plaintiff and members of the Class suffered actual harm as a result.

62.    Defendant's business practices, and each of them, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that Defendant is conducting its accounting accurately and in compliance with California and federal law as described herein.

63.    Defendant's is unlawful because it violates the California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770 *et seq.*, Cal. Civ. Code § 2954.8. and the Truth in Lending Act, 15 U.S.C. §§ 1639d(g)(3), 1640) as described herein.

64.    The violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770 *et seq.*, Cal. Civ. Code § 2954.8. and the Truth in Lending Act, 15 U.S.C. §§ 1639d(g)(3), 1640), as described in the Second Cause of Action, are predicate violation such that Defendant's unlawful competition is actionable.

65.    The practices violate the fraudulent prong as described specifically in Paragraphs 18-25 and 51-60 because Defendant violated California and federal law with the intent to withhold interest collected on Plaintiff and Class members' accounts for its own benefit. Defendant failed to communicate such withholding to Plaintiff, and Plaintiff and the Class suffered an injury in the amount of interest that was withheld and the overpayment of mortgage obligations.

66.    Plaintiff has standing to pursue this claim because she has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Defendant's business acts and practices, as alleged herein, have caused injury to Plaintiff, the Class and the public.

67.    Plaintiff and the Class are entitled to relief, including full restitution and/or restitutionary disgorgement, to the greatest extent permitted by law, which may not have been obtained by Defendant as a result of such business acts or practices, and enjoining Defendant from engaging in the practices described herein in the future.

68.    Plaintiff is entitled to an award of attorneys' fees and costs pursuant to, inter alia, California Civil Code § 1794(d).

69.    THEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CLAIM FOR RELIEF

### (Violation of Materially Identical State Consumer Protection Acts)

30.     The various states with State Escrow Interest Statutes have materially similar consumer protection acts. For the same reasons that Ditech violated California's consumer protection statutes as described in the Second Claim for Relief, it also violated the materially identical state consumer protection acts, which are listed below (the "State Consumer Protection Acts").

31.     Plaintiff was injured by Ditech's knowing and willful policy of refusing to pay interest on homeowners' escrow accounts, in violation of the State Consumer Protection Acts.

32.     The State Consumer Protection Acts prohibit and provide a remedy for unfair competition and business practices, which includes any unlawful, unfair, or fraudulent business act or practice.

33.     Defendant's knowing and willful failure to pay interest on homeowners' funds held in escrow, as required by state law, which Ditech did in order to enrich itself at the expense of homeowners, constitutes unlawful, unfair, fraudulent, and deceptive business acts and practices in violation of the State Consumer Protection Acts.

34.     Ditech's periodic "Escrow Account Disclosure" statements and mortgage statements that Ms. Capito and other members of the Class receive do not accurately disclose the amount of money they are due in connection with the escrow accounts because they do not include interest Ditech is required to pay on homeowners' funds held in escrow.

35.     Instead, these statements are knowingly and intentionally designed to assure unsuspecting homeowners like Ms. Capito and other member of the Class that Ditech is properly managing their escrow accounts and ensuring any excess escrow amounts are returned to homeowners, when in fact Ditech is intentionally withholding interest that it owes homeowners on their escrow funds.

36.     Indeed, the form statements and accompanying literature that Ditech sends or makes available to homeowners is replete with misleading information, whereby Ditech accounts for

escrow funds and claims to complete periodic analyses of homeowners' escrow accounts to ensure they are funded correctly so that any surpluses are returned to homeowners. However, in practice, Ditech intentionally excludes from its yearly analysis the interest it owes on homeowners' escrow accounts as mandated by state law, which Ditech never sends to homeowners.

37.    On one occasion, Ditech (f/k/a Green Tree Servicing, LLC) sent Ms. Capito an Escrow Account Disclosure Statement dated May 6, 2015, in which it included an "INT" reference in a paragraph defining codes that may appear on the statement.  "'INT' INDICATES AN ESCROW INTEREST CREDIT AMOUNT."  Such language does not appear on other versions of escrow statements that Ms. Capito received, but demonstrates an awareness of the requirement to pay interest.  However, the statement refers to neither the accrual nor payment of any interest on the escrow balance, and Ms. Capito was never paid interest.

38.    A typical homeowner in receipt of Ditech's escrow account statements and mortgage statements and accompanying information would naturally and reasonably assume that the accounting therein was accurate and in compliance with California and federal law. Such homeowners are thus deceived by Ditech, which nowhere corrects the misleading impression it gives them that they are receiving the full escrow amounts they are due, when in fact Ditech is intentionally and knowingly withholding interest owed.

39.    By failing to apply interest to amounts owed, Ditech's escrow account statements do not set forth accurate amounts owed in violation of both state and federal law.

40.    A reasonable consumer would think that the figures in these statements are accurate.

41.    For these reasons, Plaintiff and the Class members also overpaid on their mortgage obligations.

42.    Ditech's actions, which were willful and knowingly done, constitute intentional violations of state and federal law.

43.    Plaintiff, on behalf of members of the Class, and those similarly situated, also brings these statutory consumer protection claims pursuant to the substantially and materially similar State Consumer Protection Acts identified below, all of which were enacted and designed to protect

consumers against unlawful, fraudulent, and/or unfair business acts and practices.

    a.    Cal. Bus. & Prof. Code § 17200 *et seq.* (California);

    b.    Conn. Gen. Stat. Ann. § 42-110a *et seq.* (Connecticut);

    c.    Iowa Code § 714.16 *et seq.* (Iowa);

    d.    ME Rev. Stat. tit. 5, § 205-A *et seq.* (Maine);

    e.    MD. Code Ann., Com. Law § 13-101 *et seq.* (Maryland);

    f.    Minn. Stat. Ann. § 325F.68 *et seq.*, Minn. Stat. Ann. § 325D.09 *et seq.*, Minn. Stat. Ann. § 325D.43 *et seq.*, and Minn. Stat. Ann. § 325F.67 (Minnesota);

    g.    N.H. Rev. State. Ann. § 358-A:1 *et seq.* (New Hampshire);

    h.    N.Y. Gen. Bus. Law § 349 (New York);

    i.    OR. Rev. Stat. Ann. § 646.605 *et seq.* (Oregon);

    j.    6 R.I. Gen. Laws Ann. § 6-13.1-1 *et seq.* (Rhode Island);

    k.    Utah Code Ann. § 13-11-1 *et seq.* (Utah);

    l.    VT. Stat. Ann. tit. 9, § 2451 *et seq.* (Vermont); and

    m.    Wis. Stat. Ann. § 100.20 (Wisconsin).

44.    Plaintiff seeks, on behalf of members of the Class, and those similarly situated, the maximum amount of damages to which they are entitled by law as a result of the unlawful, unfair and deceptive trade practices complained of herein (including minimum statutory damages), plus interest.

45.    Plaintiff also seeks to recover attorneys' fees, costs, and expenses to be assessed against Defendant, within the limits set forth by applicable law.

46.    As a direct and proximate result of such actions and violations of the laws described herein, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices in an amount which will be proven at trial.

47.    Plaintiff has provided Defendant with notice of its violation of the CLRA concurrently with serving this Complaint. Pursuant to Cal. Civ. Code § 1782(d), she seeks only

injunctive relief for Defendant's CLRA violations at this time. After 30 days, if Defendant has not remedied its violation, Plaintiff will amend the Complaint to seek damages pursuant to Cal. Civ. Code § 1780(a), including actual damages, restitution, and punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Violation of California's Consumers Legal Remedies Act

### Cal. Civ. Code § 1770 *et seq.*)

48.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

49.     Plaintiff was injured by Ditech's knowing and willful policy of refusing to pay interest on homeowners' escrow accounts, in violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770 *et seq.* ("CLRA").

50.     The CLRA prohibits and provides a remedy for "unfair methods of competition and unfair or deceptive acts and practices," which it defines to include "[r]epresenting that goods or services have . . . characteristics . . . that they do not have"; "[a]dvertising goods or services with intent not to sell them as advertised"; "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law"; and "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code §§ 1770(a)(5), (9), (14), (16).

51.     Defendant's knowing and willful failure to pay interest on homeowners' funds held in escrow, as required by California law, which Ditech did in order to enrich itself at the expense of homeowners, constitutes unlawful, unfair, and deceptive acts and practices in violation of the CLRA.

52.     Ditech's periodic "Escrow Account Disclosure" statements and mortgage statements that Ms. Capito and other members of the Class receive do not accurately disclose the amount of money they are due in connection with the escrow accounts because they do not include interest Ditech is required to pay on homeowners' funds held in escrow.

53.     Instead, these statements are knowingly and intentionally designed to assure

unsuspecting homeowners like Ms. Capito and other members of the Class that Ditech is properly managing their escrow accounts and ensuring any excess escrow amounts are returned to homeowners, when in fact Ditech is intentionally withholding interest that it owes homeowners on their escrow funds.

54.     Indeed, the form statements and accompanying literature that Ditech sends or makes available to homeowners is replete with misleading information, whereby Ditech accounts for escrow funds and claims to complete periodic analyses of homeowners' escrow accounts to ensure they are funded correctly so that any surpluses are returned to homeowners. However, in practice, Ditech intentionally excludes from its yearly analysis the interest it owes on homeowners' escrow accounts as mandated by California law, which Ditech never sends to California homeowners.

55.     On one occasion, Ditech (f/k/a Green Tree Servicing, LLC) sent Ms. Capito an Escrow Account Disclosure Statement dated May 6, 2015, in which it included an "INT" reference in a paragraph defining codes that may appear on the statement. "'INT' INDICATES AN ESCROW INTEREST CREDIT AMOUNT." Such language does not appear on other versions of escrow statements that Ms. Capito received, but demonstrates an awareness of the requirement to pay interest. However, the statement refers to neither the accrual nor payment of any interest on the escrow balance, and Ms. Capito was never paid interest.

56.     A typical homeowner in receipt of Ditech's escrow account statements and mortgage statements and accompanying information would naturally and reasonably assume that the accounting therein was accurate and in compliance with California and federal law. Such homeowners are thus deceived by Ditech, which nowhere corrects the misleading impression it gives them that they are receiving the full escrow amounts they are due, when in fact Ditech is intentionally and knowingly withholding interest owed.

57.     By failing to apply interest to amounts owed, Ditech's escrow account statements do not set forth accurate amounts owed in violation of both state and federal law.

58.     A reasonable consumer would think that the figures in these statements are accurate.

59.     For these reasons, Plaintiff and the Class Members also overpaid on their

1  mortgage obligations.

2      60.    Ditech's actions, which were willful and knowingly done, constitute intentional

3  violations of California and federal law.

4      61.    Plaintiff has provided Defendant with notice of its violation of the CLRA

5  concurrently with serving this Complaint. Pursuant to Cal. Civ. Code § 1782(d), she seeks only

6  injunctive relief for Defendant's CLRA violations at this time. After 30 days of the CLRA notice, if

7  Defendant has not remedied its violation, Plaintiff will amend the Complaint to seek damages

8  pursuant to Cal. Civ. Code § 1780(a), including actual damages, restitution, and punitive damages.

9  <u>**FIFTH CLAIM FOR RELIEF**</u>

10  **(Breach of Contract)**

11      62.    Plaintiff realleges and incorporates by reference all the foregoing allegations as if

12  they were fully set forth herein.

13      63.    Plaintiff and the Class members entered into binding agreements with Ditech, or

14  Ditech's predecessors in interest prior to acquiring ownership and/or servicing rights for the

15  mortgage loans.

16      64.    Plaintiff's mortgage agreement provides that the agreement is subject to both federal

17  and California law.

18      65.    Members of the Class entered into substantially similar mortgage agreements with

19  Ditech, or Ditech's predecessors in interest prior to acquiring ownership and/or servicing rights for

20  the mortgage loans, which subject those agreements to both federal and the applicable state law.

21      66.    Pursuant to the State Escrow Interest Statutes and the Truth in Lending Act, which

22  are incorporated by reference into the mortgage agreement, Ditech was and is obligated to pay

23  interest on the escrow funds to the Plaintiff and other members of the Class.

24      67.    Ditech did not pay interest on these funds held in escrow for Plaintiff and members

25  of the Class.

26      68.    Ditech therefore breached its agreements with Plaintiff and members of the

27  Class. As a result of these breaches, Plaintiff and other members of the Class have been damaged in

28  an amount to be determined at trial, together with pre-judgment and post-judgment interest thereon.

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment)

69.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

70.     Plaintiff and other members of the Class conferred a benefit on Ditech by paying money in the amounts designated by Ditech to be deposited in escrow for taxes, assessments, insurance, or for other purposes relating to the property that is the collateral for the mortgage.

71.     The payments made by Plaintiff and members of the Class that were deposited into the escrow accounts earned interest.

72.     Pursuant to the State Escrow Interest Statutes and the Truth in Lending Act, state laws impose on Ditech an obligation to pay interest on the escrow funds of Plaintiff and other members of the Class.

73.     Ditech breached this legal obligation, thereby retaining the interest that accrued on the escrow balances conferred by the payments from Plaintiff and members of the Class.

74.     As a result of that breach, Ditech was able to benefit by investing or otherwise using the escrow funds of Plaintiff and other members of the Class to earn float income for itself for free, without paying Plaintiff or other members of the Class for use of their escrow funds, as required by the State Escrow Interest Statutes and the Truth in Lending Act

75.     This float income is distinct from the interest owed to borrowers.

76.     Defendant was enriched through this float income.

77.     Defendant, in good conscience, should not be permitted to retain this income.

78.     Defendant further knowingly received and retained its wrongful benefits and funds from Plaintiff and members of the Class. Ditech was thus enriched at the expense of Plaintiff and other members of the Class such that it is against equity and good conscience to permit Ditech to retain the interest due Plaintiff and other members of the Class on their escrow funds.

79.     As a result of Defendant's wrongful conduct alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, the Plaintiff and members of the Class.

80.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately

1  from, the conduct alleged herein.

2      81.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant

3  to be permitted to retain the benefits it received, without justification, by failing to pay mandated

4  interest to Plaintiff and members of the Class in an unlawful, deceptive, and unfair manner.

5      82.    The financial benefits derived by Defendant rightfully belong to Plaintiff and

6  members of the Class. Defendant should be compelled to return in a common fund for the benefit of

7  Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

8  ### SEVENTH CLAIM FOR RELIEF

9  ### (Violation of the Truth in Lending Act, 15 U.S.C. §§ 1639d(g)(3), 1640)

10      83.    Plaintiff repeats and realleges all the foregoing allegations as if they were fully set

11  forth herein.

12      84.    Plaintiff is a "person," as defined in 15 U.S.C. § 1602(e).

13      85.    Plaintiff is a "consumer," as defined in 15 U.S.C. § 1602(i).

14      86.    Defendant is a "creditor" as defined in 15 U.S.C. § 1602(g).

15      87.    Plaintiff maintains an account with Defendant that is an "impound, trust, or escrow

16  account" within the meaning of 15 U.S.C. §§ 1639d(g)(3).

17      88.    The Truth in Lending Act requires that Defendant pay interest on funds held in

18  escrow accounts as required under state law.

19      89.    Defendant failed to pay interest on funds held in escrow accounts as required under

20  state law and the Truth in Lending Act.

21      90.    As a result of Defendant's violation of the Truth in Lending Act, Plaintiff and the

22  members of the TILA Class have been damaged in an amount to be determined at trial.

23      91.    By reason of the foregoing, Plaintiff and the members of the TILA Class are entitled

24  to: their actual damages, together with interest thereon; statutory damages in an amount of not more

25  than the lesser of $1,000,000 or 1 per centum of the net worth of Defendant; and their reasonable

26  attorney's fees and legal costs.

27  ### PRAYER FOR RELIEF

28      A.    Certifying the proposed class pursuant to Federal Rule of Civil Procedure 23, finding

1  Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms

2  representing Plaintiff as counsel for the Class;

3          B.      Declaring that Defendant is financially responsible for notifying the Class members

4  of the pendency of this suit;

5          C.      Declaring that the payment of interest pursuant to the State Escrow Interest Statutes

6  are compulsory and that failure to pay constitutes a per se violation of those States' laws and the

7  Truth in Lending Act.

8          D.      Enjoining Defendant from committing the violations of law alleged herein in the

9  future, or such other declaratory or injunctive relief as the Court or jury determines is appropriate;

10         E.      Awarding monetary damages to Plaintiff and the Class, including but not limited

11 to any compensatory, incidental, or consequential damages in an amount that the Court or jury

12 will determine, in accordance with applicable law;

13         F.      Awarding any and all equitable monetary relief that the Court or jury deems

14 appropriate, in accordance with applicable law;

15         G.      Awarding punitive or exemplary damages in accordance with proof and in an

16 amount consistent with applicable precedent;

17         H.      Awarding Plaintiff and the Class their reasonable costs and expenses of suit,

18 including attorneys' fees;

19         I.      Awarding pre- and post-judgment interest to the extent the law allows; and

20         J.      Such further relief as this Court may deem just and proper.

21                              **JURY DEMAND**

22         Plaintiff hereby demands a trial by jury on all issues so triable.

23

24         Dated:  August 17, 2018                **TYCKO & ZAVAREEI LLP**

25

26         _____

27                                              Hassan A. Zavareei
                                                Anna Haac
28                                              Sabita Soneji
                                                Rebecca Azhdam

483 Ninth Street, Suite 200
Oakland, CA 94706
Telephone: 510-254-6808
Telephone: (202) 973-0900
hzavareei@tzlegal.com
ahaac@tzlegal.com
ssoneji@tzlegal.com
razhdam@tzlegal.com

KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
Jonathan M. Streisfeld (*pro hac vice* to be filed)
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
streisfeld@kolawyers.com
ostrow@kolawyers.com

PEARSON, SIMON & WARSHAW, LLP
Melissa S. Weiner (*pro hac vice* to be filed)
Joseph C. Bourne (State Bar No. 308196)
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone:     (612) 389-0600
Facsimile:     (612) 389-0610
mweiner@pswlaw.com
jbourne@pswlaw.com

*Attorneys for Plaintiffs*

CLASS ACTIONCOMPLAINT